IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENELL D. HENIX (#08553-035), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2606 |
| | § | |
| WARDEN JOYCE FRANCIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

Federal prisoner Jenell D. Henix has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that the United States Bureau of Prisons (the "BOP") has wrongfully denied her the right to serve the last six months of her sentence of imprisonment in a community corrections center or halfway house. After reviewing all of the pleadings, and the applicable law, the Court **denies** the petition and **dismisses** this case for reasons that follow.

**I.   BACKGROUND**

Henix advises that she was sentenced to 18 months of imprisonment on February 18, 2005, following the revocation of her probation in the United States District Court for the Western District of Louisiana. Henix does not challenge her underlying conviction or the revocation of her probation here. Instead, Henix contends that she is entitled to federal habeas corpus relief under 28 U.S.C. § 2241 because the BOP implemented a revised policy in December 2002, after her sentence of imprisonment was imposed, which policy limits the

amount of time that criminal defendants sentenced to imprisonment may spend in a community corrections center ("CCC"), sometimes referred to as a halfway house, prior to their release from custody.

The change in policy, which is based on the BOP's interpretation of the federal statutes concerning placement of offenders in these facilities, is set forth in greater detail below. Henix complains that the BOP's revised policy is illegal and she challenges the BOP's interpretation of the statutes governing "pre-release placement" in a CCC. Henix complains further that the policy violates her rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution. Henix adds that the change in policy violates the Ex Post Facto Clause. For reasons set forth below, the Court concludes that Henix is not entitled to federal habeas corpus relief.

## II. STANDARD OF REVIEW

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is correctly used to challenge the manner in which a sentence is executed. *See Reyes-Requena v. United States*, 243 F.3d 893, 900-01 (5th Cir. 2001). A § 2241 petition that attacks the manner in which a sentence is carried out or a determination affecting the length of its duration "must be filed in the same district where the prisoner is incarcerated." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). Because the petitioner is in custody at the nearby Federal Prison Camp in Bryan, Texas, this Court has jurisdiction over her petition.

To prevail, a habeas corpus petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A *pro*

*se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a federal district court may dismiss a habeas corpus proceeding if it appears from the face of the petition that the petitioner is not entitled to relief. *See Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (discussing summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases); *see also* 28 U.S.C. § 2243.

### III. THE PRISON POLICY IN DISPUTE

The policy in dispute concerns a shift in the BOP's interpretation of its statutory authority to designate or assign inmates to CCC facilities pursuant to 18 U.S.C. §§ 3621 and 3624. In pertinent part, 18 U.S.C. § 3621 establishes the BOP's authority to designate a federal prisoner's place of imprisonment once sentence has been imposed:

> The [BOP] shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). After a prisoner has been incarcerated, 18 U.S.C. § 3624 governs the BOP's discretion to designate facilities for pre-release confinement towards the end of a sentence of imprisonment:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months of, the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United

> States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c). The petitioner in this case, who has been in federal prison from the commencement of her sentence, seeks assignment to a CCC toward the end of her term of imprisonment for no less than six months.

Until December 2002, the BOP apparently construed 18 U.S.C. § 3624(c) as granting it unlimited authority to evaluate inmates for placement in a CCC for the last six months of a term of incarceration. However, in December of 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a formal memorandum opinion concerning the BOP's practice of placing certain offenders, who have received a sentence of imprisonment, in a CCC. After reviewing the relevant Sentencing Guidelines, case law, and statutory authority, the OLC memorandum concluded that the BOP's current practice of placing these offenders in a CCC directly at the outset of a sentence of imprisonment, or to transfer the prisoner to community confinement during the course of her sentence, was "unlawful" because confinement in a CCC did not constitute "imprisonment" within the meaning of 18 U.S.C. § 3621(b). *See Goldings v. Winn*, 383 F.3d 17, 19-20 (1st Cir. 2004) (discussing the contents of the December 2002 OLC Memorandum). The OLC memorandum concluded further that 18 U.S.C. § 3624(c), which does provide the BOP the authority to send prisoners to CCCs toward the end of a sentence, sets an upper limit on the amount of time that a prisoner can serve in that type of facility at 10 percent of his or her sentence, but no more than six months. *See id.* In compliance with the OLC memorandum, the BOP revised its prior policy

of sending prisoners to a CCC for the final six months of their sentences, and began to limit designations of prisoners to a CCC for no more than 10 percent of their sentences.

## IV. **DISCUSSION**

### A. **Petitioner's Challenge to the December 2002 Policy**

A sentence of imprisonment was imposed in Henix's case in a judgment entered in 1999, well before the BOP changed its policy in December 2002. Henix argues that she is entitled to serve more than a mere ten percent of this sentence in a CCC. Thus, Henix maintains that she should be eligible for transfer to a CCC sooner than the present policy allows, allowing a full six months of final pre-release custody in a halfway house.[1]

Addressing arguments similar to the ones made by the petitioner, two circuit courts of appeal struck down the December 2002 policy because its interpretation of the limit imposed by § 3624(c) failed to consider that § 3621(b) gave the BOP discretion to transfer prisoners, if appropriate, at any time. *See Goldings v. Winn*, 383 F.3d 17, 23-24 (1st Cir. 2004) (holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC before the last 10 percent of their prison terms, and that § 3621(b) confers the discretionary authority upon the BOP to execute such transfers at any time); *Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (holding essentially the same). In response, the BOP proposed and adopted a new policy on CCC placement that went into effect on February 14,

---

[1] Under the 10 percent limitation, an inmate must have received a prison sentence of five years or longer to be eligible for the statute's maximum six-month period of community confinement. *See Loeffler v. Menifee*, 326 F. Supp. 2d 454, 462 (S.D.N.Y. 2004). Thus, the ten percent limitation affects only those prisoners serving a sentence of five years or less.

5

2005. *See Community Confinement*, 70 Fed. Reg. 1659 (Jan. 10, 2005) (codified at 28 C.F.R. § 570.21); *see also Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548, 550 (E.D.N.Y. 2005) (setting forth the policy in full). As with the December 2002 policy, the February 2005 policy allows the BOP to limit CCC assignments to the last ten percent of the sentence. The February 2005 policy clarifies the BOP's interpretation that it has the right to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months, and that such an exercise of discretion is consistent with 18 U.S.C. § 3621(b). *See* 70 Fed. Reg. at 1661.

As the petitioner concedes, the February 2005 policy has replaced the one put into place in December 2002. Because the December 2002 policy has been superseded, any challenge to that policy is moot. *See Moss v. Apker*, 376 F. Supp. 2d 416, 420 (S.D. N.Y. 2005); *see also Bilinsky v. Federal Bureau of Prisons*, 2005 WL 1475558 (D. N.J. June 22, 2005) (denying habeas corpus relief on a challenge to the December 2002 policy on placement in a CCC in light of the changed policy). Petitioner's challenge to the December 2002 policy is denied.

### B. Petitioner's Challenge to the February 2005 Policy

Acknowledging the effect of a new rule, the petitioner also attempts to challenge the revised February 2005 policy as an unreasonable interpretation of 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). Such a claim is governed by the two-step framework for statutory interpretation established by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

6

837 (1984). Under this two-step analysis, a reviewing court must first look to the language of the statute itself to determine "whether Congress has directly spoken to the precise question at issue," *i.e.*, is the statutory language clear and unambiguous, and if so, "that is the end of the matter." *Chevron*, 467 U.S. at 842-43. However, where, as here, "the statute is silent or ambiguous with respect to the specific issue," then the question for the court is "whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

Agency rules issued within the scope of authority granted to it by Congress are entitled to heightened deference, and any ensuing regulation is binding on the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (citing *Chevron*, 467 U.S. at 844). Rules entitled to such deference typically have been subject to the notice and comment period required by the Administrative Procedures Act (the "APA"). *See Mead*, 533 U.S. at 230-31. Courts have found that the new regulations promulgated under the February 2005 policy, which was published in Federal Register in compliance with the APA, are entitled to heightened deference and that these regulations are a permissible interpretation of the discretion afforded by 18 U.S.C. § 3621(b). *See Moss v. Apker*, 376 F. Supp. 2d 416, 422 (S.D.N.Y. 2005); *Wiesel v. Menifee*, No. Civ. 9681, 2005 WL 1036297, *6 (S.D.N.Y. May 2, 2005); *DeFrancesco v. Federal Bureau of Prisons*, No. Civ. A. 05-1780, 2005 WL 1712020, *5 (D. N.J. July 20, 2005); *Jackson v. Federal Bureau of Prisons*, No. Civ. A. 05-2339, 2005 WL 1705775, *5 (D. N.J. July 20, 2005).

Although no circuit court of appeals has addressed the new February 2005 policy, an overwhelming majority of the district courts to consider challenges similar to the one raised by the petitioner have upheld it. *See Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548, 551-52 (E.D.N.Y. 2005); *Moss v. Apker*, 376 F. Supp. 2d 416 (S.D.N.Y. 2005); *Wiesel v. Menifee*, No. 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2, 2005); *Levine v. Apker*, 05 Civ. 3472, 2005 WL 1417134 (S.D.N.Y. May 20, 2005); *Levine v. Menifee*, 05 Civ. 1902, 2005 WL 1384021 (S.D.N.Y. June 9, 2005); *Troy v. Apker*, 05 Civ. 1306, 2005 WL 1661101 (S.D.N.Y. June 30, 2005); *DeFrancesco v. Federal Bureau of Prisons*, No. Civ. A. 05-1780, 2005 WL 1712020 (D. N.J. July 20, 2005); *Jackson v. Federal Bureau of Prisons*, No. Civ. A. 05-2339, 2005 WL 1705775 (D. N.J. July 20, 2005); *Woodall v. Federal Bureau of Prisons*, No. Civ. A. 05-1542, 2005 WL 1705777 (D. N.J. July 20, 2005); *Gentzler v. United States*, 05 Civ. 4521, 2005 WL 1773684 (S.D.N.Y. July 27, 2005); *Bialostok v. Apker*, No. 05 Civ. 2698, 2005 WL 1946480 (S.D.N.Y. Aug. 12, 2005); *Hurley v. Sherrod*, Civ. A. No. 05cv01777, 2005 WL 2141490 (D. Colo. Sept. 1, 2005); *Lee v. United States*, No. 04-0610-CG-C, 2005 WL 2179796 (S.D. Ala. Sept. 6, 2005); *Charboneau v. Menifee*, No. 05 Civ. 2698, 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005). By contrast, only a small minority of district courts have disagreed. *See United States v. Paige*, 369 F. Supp. 2d 1257 (D. Mont. 2005); *Pimentel v. Gonzales*, 367 F. Supp. 2d 365 (E.D.N.Y. 2005); *Drew v. Menifee*, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. March 4, 2005).

Courts that have approved the February 2005 policy have done so under a straightforward application of the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230

8

(2001), which upheld the BOP's discretionary decision to exclude certain inmates – those convicted of offenses involving firearms – from eligibility for early release after successful completion of a drug treatment program under 18 U.S.C. § 3621(e)(2)(B). *See, e.g., Yip*, 363 F. Supp. 2d at 552 ("There is no significant distinction between the situation in *Lopez* and the case at hand."); *Moss*, 376 F. Supp. 2d at 423 ("The policy upheld by the Supreme Court in *Lopez* is indistinguishable in all material respects from the one at issue in this case."); *Wiesel*, 2005 WL 1036297, at *6 ("The reasoning in *Lopez* is equally applicable to the present case.").

The Supreme Court in *Lopez* held that the BOP's implementing regulation was a permissible exercise of the Bureau's discretion under 18 U.S.C. § 3621(e)(2)(B). *Lopez*, 531 U.S. at 242. Like the regulation at issue in *Lopez*, the February 2005 policy represents a categorical exercise of the Bureau's statutory discretion. The BOP "has identified a category of prisoners – inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c), but are eligible under Section 3621(b) – and created a rule denying transfers to all of them." *Yip*, 363 F. Supp. 2d at 552. Under *Lopez*, the regulation is valid if it is a reasonable interpretation of § 3621(b) and Congress did not "clearly express[ ] an intent to withhold [the BOP's] authority" to regulate its discretion under § 3621(b) through adoption of a categorical rule. *Lopez*, 531 U.S. at 244. The Court has considered all of the reported cases concerning the February 2005 policy, as well the petitioner's arguments. The Court finds persuasive the reasoning in those cases that upheld the February 2005 policy and concludes the policy is valid.

9

Moreover, the Court further concludes that the petitioner fails to articulate any constitutional violation in connection with application of the prison policy at issue in this case. A prisoner does not have a constitutional due process right to incarceration in a particular place or at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The petitioner does not demonstrate that she has been treated differently under the policy than other, similarly situated prisoners for purposes of establishing an equal protection claim. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). In addition, the February 2005 policy's application to the petitioner poses no *ex post facto* violation because there has been no change to the applicable statutes and no increase to the punishment imposed. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995). Absent a showing that the policy has violated the petitioner's constitutional rights, federal habeas corpus relief is not warranted.

## V. CONCLUSION AND ORDER

For all of the foregoing reasons, the petitioner is not entitled to federal habeas corpus relief under 28 U.S.C. § 2241. Accordingly, the Court **ORDERS** as follows:

1. The petition for a federal writ of habeas corpus (Docket Entry No. 1) is **DENIED**.

2. The order directing the government to answer (Docket Entry No. 6) is **VACATED**.

3. The petitioner's motion for a preliminary injunction (Docket Entry No. 14) is **DENIED**.

4. This case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **October 5, 2005.**

_____
Nancy F. Atlas
United States District Judge